## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**WILLIAM F. DOSHIER and DOTSTRATEGY, CO.**                              **PLAINTIFFS**

**v.**                              Case No. 4:18-cv-00628-KGB

**FACEBOOK, INC.**                              **DEFENDANT**

## ORDER

Before the Court are plaintiffs William F. Doshier and dotStrategy, Co.'s ("dotStrategy") motion to remand and motion for leave to file reply in support of their motion to remand (Dkt. Nos. 15, 22).  Mr. Doshier and dotStrategy contend that "Facebook's Notice of Removal was not filed within the time permitted by the removal statue, and, therefore, was defective." (Dkt. No. 15, at 1).  Defendant Facebook, Inc. ("Facebook"), filed an opposition to the motion to remand and to plaintiffs' request to file a reply in support of their motion to remand (Dkt. Nos. 21, 25).

The Court grants Mr. Doshier and dotStrategy's motion for leave to file reply in support of their motion to remand (Dkt. No. 22).  The Court directs Mr. Doshier and dotStrategy to file their reply in support of their motion to remand within 10 days from the entry of this Order.  For purposes of resolving the pending motion to remand, the Court has considered the proposed reply. For the following reasons, the Court denies the motion to remand (Dkt. No. 15).

Also pending before the Court is plaintiffs' motion for default judgment (Dkt. No. 3). Facebook filed a response in opposition to the motion (Dkt. No. 9), and plaintiffs filed a reply (Dkt. No. 33). For the following reasons, the Court denies plaintiffs' motion for default judgment (Dkt. No. 3).

I.      **Overview Of Arguments**

Facebook removed this case from Faulkner County, Arkansas, Circuit Court on September 4, 2018 (Dkt. No. 1).  Before removal, Mr. Doshier and dotStrategy filed a motion for default judgment (Dkt. No. 3).  Facebook responded in opposition to the motion for default judgment (Dkt. No. 9).  Mr. Doshier and dotStrategy also filed a motion to remand, contending that Facebook did not timely remove this matter (Dkt. No. 15).  The court's removal jurisdiction is strictly construed, and all doubts are resolved in favor of remand.  *Dahl v. R.J. Reynolds Tobacco Co.,* 478 F.3d 965, 968 (8th Cir. 2007).

By prior Order, this Court set forth the procedural history of the case and ruled on several pending motions (Dkt. No. 31).  As pertinent to the pending motions, in its prior Order, the Court examined the issues surrounding service of process and denied Mr. Doshier and dotStategy's request and supplemental request for jurisdictional discovery.  At the time, plaintiffs' motion for default judgment and motion to remand were not yet ripe, according to the parties.  Those motions are now ripe for the Court's consideration.

Mr. Doshier and dotStrategy contend that Facebook was properly served on July 16, 2018. Facebook filed a notice of removal on September 4, 2018.  Therefore, Mr. Doshier and dotStrategy allege the removal was not filed within the 30-day time limit set forth in 28 U.S.C. § 1446.  For the following reasons, the Court concludes that plaintiffs did not effect service on Facebook on July 16, 2018.  Further, the Court concludes that Facebook timely and properly filed its notice of removal.

Further, because plaintiffs contend that Facebook was properly served on July 16, 2018, plaintiffs contend that Facebook did not file a timely answer to plaintiffs' complaint and that,

therefore, plaintiffs are entitled to default judgment against Facebook (Dkt. No. 3, at 12). The Court denies plaintiffs' motion for default judgment (Dkt. No. 3).

### III. Service Of Process

As an initial matter, Mr. Doshier and dotStrategy's motion to remand and motion for default judgment depend on their arguments regarding whether Facebook was properly served on July 16, 2018. This Court examined these argument when analyzing and rejecting Mr. Doshier and dotStrategy's request and supplemental request for jurisdictional discovery. Having examined the record before the Court, including all filings related to this matter, the Court determines that service on Facebook was not effective on July 16, 2018.

#### A. Factual Background Related To Service

The Court has reviewed the full record in making a determination on this matter. Mr. Doshier and dotStrategy have presented an affidavit from Edwina Keith, assistant for Mr. Doshier and dotStrategy's counsel, regarding service of process (Dkt. No. 3, Ex. G). Ms. Keith states that she enclosed the summons and complaint into a certified letter addressed to Mark Zuckerberg, Chief Executive Officer of Facebook, via certified mail, restricted delivery with a Return Receipt requested (*Id.*, ¶¶ 1-2). Ms. Keith also states that she affixed a Return Receipt Green Card to the back of the envelope (*Id.*, ¶ 6). When the Return Receipt Green Card was not returned, Ms. Keith requested and obtained a "Proof of Delivery Letter" via e-mail from the USPS, on August 13, 2018 (*Id.*, ¶ 12). There is no record evidence to dispute Facebook's representation that the Return Receipt Green Card remains attached to the package and has not been signed or returned to counsel for Mr. Doshier and dotStrategy (Dkt. No. 9-2, Ex. 1).

Facebook presents a declaration from Marshall Ney, partner at the law firm Friday, Eldredge & Clark LLP and counsel of record for Facebook (Dkt. No. 9, Ex. A). According to Mr.

Ney, Facebook learned about the current action through a third-party docket monitoring service (*Id.*, ¶ 3). Mr. Ney states that, after Facebook learned about this action, he and Facebook's in-house counsel regularly checked for receipt of process at Facebook (*Id.*, ¶¶ 5-6). On August 29, 2018, Mr. Ney and Facebook learned that Mr. Doshier and dotStrategy filed on August 27, 2018, an affidavit of service and a motion for default judgment, in Faulkner County, Arkansas, Circuit Court (*Id.*, ¶ 8).

On August 13, 2018, the USPS sent a letter via e-mail to counsel for Mr. Doshier and dotStrategy in response to a request for proof of delivery on the package (Dkt. No. 18-4). In the letter, the USPS states that the package was "delivered, to agent" on July 16, 2018, at 8:23 a.m. by certified mail (*Id.*). The USPS letter also includes an image of the recipient's signature that indicates "LS" or "Lucus Simons" signed for the package (*Id.*). Mr. Doshier and dotStrategy have also provided a copy of the package tracking information that states the package was "delivered, to agent" on July 16, 2018, at 8:23 a.m. (Dkt. No. 3, Ex. D).

Facebook has presented a declaration from Juan Cortes, the director of campus distribution for Millennium Group (Dkt. No. 9, Ex. B). Mr. Cortes states that he is not aware of an individual by the name of "Lucus Simons," but Lucas Symons is an employee of Millennium Group and works on Mr. Cortes' team (*Id.*, ¶¶ 4-5). According to Mr. Cortes, Mr. Symons collects Facebook's mail delivered to the local USPS location on a daily basis and brings that mail to Facebook for processing (*Id.*, ¶ 5). Mr. Cortes further states that Mr. Symons is not an officer or managing or general agent of Facebook (*Id.*, ¶ 6). According to Mr. Cortes, Mr. Cortes and Mr. Symons have not been authorized, in writing or in any other form, to accept service of process on behalf of Facebook or Mark Zuckerberg (*Id.*, ¶ 7). Further, Mr. Cortes and Mr. Symons are not on a USPS "Standing Delivery Order" form authorizing such person to accept Restricted Delivery U.S. Mail

on behalf of Mark Zuckerberg, or on behalf of any other Facebook executive (*Id.*, ¶ 8). Mr. Symons also has not been authorized, in writing or in any other form, to accept Restricted Delivery U.S. Mail on behalf of Mark Zuckerberg, or on behalf of any other Facebook executive (*Id.*, ¶ 9).

While this dispute was pending, Mr. Doshier and dotStrategy submitted email correspondence dated September 10, 2018, between their counsel's office and the USPS (Dkt. No. 18-2). In that correspondence, a USPS representative states that the electronic signature image included in an August 13, 2018, letter from the USPS and indicating a parcel with tracking number 7014 2870 0000 5130 5595 was delivered on July 16, 2018, at 8:23 a.m. is a signature from a USPS Form 3849 (*Id.*).

According to Mr. Cortes' supplemental declaration, he has personal knowledge of who, if anyone, is authorized to accept Restricted Delivery U.S. Mail on behalf of Facebook or Mr. Zuckerberg (Dkt. No. 19-2, ¶ 2). Mr. Cortes avers that, after learning of the September 10, 2018, correspondence, he went to the USPS office in Menlo Park, California, "to obtain copies of any documents that provide written authorization for any individual to accept Restricted Delivery U.S. Mail on behalf of Mark Zuckerberg or on behalf of Facebook." (Dkt. No. 21, Ex. A, ¶ 4). Mr. Cortes states that the USPS "has no written authorization of any kind . . . on file authorizing any individual to accept Restricted Delivery U.S. Mail on behalf of Mark Zuckerberg or on behalf of Facebook." (*Id.*, ¶ 5). Mr. Cortes further states that the USPS gave him the entire record of the specific Form 3849 at issue in this case, and it only contains a scanned image of the delivery section of the form (*Id.*, ¶ 7). The scanned image that the USPS provided to Mr. Cortes is identical to the one attached to the letter sent to counsel for plaintiffs on August 13, 2018 (*Id.*, ¶ 7). Mr. Cortes states that the USPS "did not have the original executed Form 3849" that is at issue in this case when he visited the Post Office (*Id.*, ¶ 8). Mr. Cortes further states that "the Post Office

5

retains original executed Forms 3849 for only a short period of time following the signature image being electronically scanned." (*Id.*).

### B. Analysis Of Service Of Process

A federal court lacks personal jurisdiction over a defendant if service of process is insufficient. *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, (1987). "[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444-45 (1946).

Federal Rule of Civil Procedure 4(h)(1) provides in pertinent part:

a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:

(1) in a judicial district of the United States:

   (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

   (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant. . . .

Under Rule 4(e)(1), "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." It is plaintiffs' burden to prove service was proper, once service is contested. *Richardson v. Volkswagenwerk, A.G.*, 552 F. Supp. 73, 79 (W.D. Mo. 1982); *see also Roberts v. USCC Payroll Corp.*, 2009 WL 88563, at *1 (N.D. Iowa Jan 13, 2009) ("In a Rule 12(b)(5) motion, the party making the service has the burden of demonstrating validity when an objection to the service is made."). The Court will address service of process under Arkansas law because Mr. Doshier and dotStrategy assert that service was

accomplished in compliance with Rule 4 of Arkansas Rules of Civil Procedure (Dkt. No. 3, ¶¶ 8, 34).

Under Arkansas law, specifically Arkansas Rule of Civil Procedure 4(e), "[w]henever the law of [Arkansas] authorizes service outside this state, the service, when reasonably calculated to give actual notice, may be made" "[b]y mail as provided in subdivision (d)(8) of this rule . . . ." Ark. R. Civ. P. 4(e)(3).[1] Specifically under Rule 4(d)(8), service of process may be made by mail in two ways.[2] First, such service may be made "by any form of mail addressed to the person to be served with a return receipt requested and delivery restricted to the addressee or the agent of the addressee." Ark. R. Civ. P. 4(d)(8)(A)(i). The addressee must be a natural person specified by name, and the agent of the addressee must be authorized in accordance with USPS regulations. *Id.* "However, service on the registered agent of a corporation may be made by certified mail with a

---

[1] Rule 4(e) also provides that service may be made "[i]n any manner prescribed by the law of the place in which service is made in that place in an action in any of its courts of general jurisdiction . . . ." Ark. R. Civ. P. 4(e)(2). Here, service was attempted on Facebook and Mr. Zuckerberg in California. Facebook contends that proper service was not accomplished under California law (Dkt. No. 1, at 7-8). Facebook maintains that, under California law, service of process must be made on, as potentially applicable here, the registered agent, the chief executive officer, or a person authorized to receive service of process. Cal. Code Civ. P. § 416.10(a)-(d). Facebook asserts that service was not made on any such person nor was service made in accordance with California's requirements for service by mail. Cal. Code Civ. P. § 415.30(a). Mr. Doshier and dotStrategy do not appear to dispute this.

[2] In the notice of removal, Facebook argues that "[w]hen serving a foreign corporation by mail, compliance with Rule 4(d)(5) is required." (Dkt. No. 1, ¶ 27). Rule 4(d), in effect at the time of the events giving rise to this dispute, addresses personal service inside the state of Arkansas, and subsection five of that provision requires that, upon "a domestic or foreign corporation or upon a partnership, limited liability company, or any unincorporated association subject to suit under a common name" the summons and complaint be delivered to "an officer, partner other than a limited partner, managing or general agent, or any agent authorized by appointment or by law to receive service of summons." Ark. R. Civ. P. 4(d)(5). Facebook cites two cases to support this proposition. *See Diamond Bear Brewing Co. v. Stromberg Tanks International, Inc.*, Case No. 4:10-cv-00080-JLH, 2010 WL 1417001 (E.D. Ark. April 6, 2010); *Smith v. Hughes Network Systems, LLC*, No. 4:06CV00654 JLH, 2007 WL 1219694 (E.D. Ark. April 24, 2007). The Court takes no position on this assertion, as resolving this issue is not necessary for the Court's resolution of the issues currently before it.

return receipt requested." *Id.* When service is made pursuant to Arkansas Rule of Civil Procedure 4(d)(8)(A), such service "shall not be the basis for the entry of a default or judgment by default unless the record contains a return receipt signed by the addressee or the agent of the addressee or a returned envelope, postal document or affidavit by a postal employee reciting or showing refusal of the process by the addressee." *Id.* 4(d)(8)(A)(ii).[3]

In Arkansas, statutory service requirements must be strictly construed, and compliance with them must be exact. *Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.*, 120 S.W.3d 525, 530 (2003). Under Arkansas law, "[a]ctual knowledge of a proceeding does not validate defective process." *Wilburn v. Keenan Cos.*, 768 S.W.2d 531, 532 (Ark. 1989). Other courts have noted that service of process by mail can be problematic and that service by mail must still meet the requirements of the law. *See Duquette v. Pac-Perl, LLC*, No. 3:13–CV–03067, 2014 WL 6908007, at *2 (W.D. Ark. Dec. 8, 2014) (noting that "problems with the United States Postal Service . . . do not suffice to overcome the formal requirements for service of process.").

Mr. Doshier and dotStrategy, in an effort to alter or shift their burden regarding service of process, suggest this Court apply the common law mailbox rule (Dkt. No. 22-1, ¶ 93). Facebook opposes this (Dkt. No. 25, at 6-7). Mr. Doshier and dotStrategy fail to cite any authority in support of their suggestion. Further, cases that articulate and apply a high burden under Arkansas law to service of process disputes undercut their mailbox rule argument. Accordingly, the Court rejects it.

---

[3] The Court acknowledges that, under Rule 4(d)(8), other methods of service are available, but those methods are not at issue in this case. *See, e.g.*, Ark. R. Civ. P. 4(d)(8)(B) (regarding service by mail through notice and acknowledgment); 4(d)(8)(C) (regarding service by a commercial delivery service).

There can be no dispute that Facebook has a registered agent authorized to receive service by mail (Dkt. No. 19-1).  This fact significantly undercuts any argument that Facebook generally or specifically in this case attempted to evade service.  There is no dispute that Mr. Doshier and dotStrategy did not attempt to serve Facebook's registered agent.  Further, because they did not send the summons and complaint by first-class mail, together with two copies of a notice and acknowledgement conforming substantially to a form adopted by the Arkansas Supreme Court, Mr. Doshier and dotStrategy do not satisfy the requirements of Arkansas Rule 4(d)(8)(B).

Mr. Doshier and dotStrategy contend that the "Proof of Delivery Letter" received by Ms. Edwina Keith "is equivalent to a Return Receipt Electronic, which is equivalent to a signed physical Return Receipt Green Card according to the USPS." (Dkt. No. 22-1, ¶ 2).  From certain filings, it appears that Mr. Doshier and dotStrategy rely on this proposition to argue that this fact alone evidences proper service.  The Court disagrees.

As an initial matter, there is no explanation for why Mr. Doshier and dotStrategy received a Proof of Delivery Letter from the USPS, despite having purchased and requested a Return Receipt Green Card (Dkt No. 3, at 8).  Mr. Doshier and dotStrategy only assert that Ms. Keith requested the Proof of Delivery Letter after the Return Receipt Green Card that was attached to the summons and complaint was not returned.  To the extent Mr. Doshier and dotStrategy's service argument depends on the Court assuming the USPS always operates as intended, this unexplained fact undercuts that argument.  *See* Ark. R. Civ. P. 4, Reporter's Notes (2002 amend.) (explaining that "lawyers have questioned the efficacy of service by mail . . . in part because the postal service does not always follow its own rules regarding restricted delivery mail.").  The Court declines to make the assumption that the USPS always operates as intended.

Even if the Court were to accept the proposition that the Proof of Delivery Letter in the record is the equivalent of a Return Receipt Electronic, which is equivalent to a physical Return Receipt Green Card, the Court's inquiry regarding proper service would not end there. In cases that involve actual physical Return Receipt Green Cards, the Court goes on to examine whether the record contains a Return Receipt signed by the addressee or agent of the addressee sufficient to comply with Arkansas law. *See, e.g., Diamond Bear Brewing Co. v. Stromberg Tanks International, Inc.*, Case No. 4:10-cv-00080-JLH, 2010 WL 1417001 (E.D. Ark. 2010) (determining that "[a]t issue is whether the record contains a return receipt signed by the addressee or the agent of the addressee.").

Despite voluminous filings, it remains difficult to discern the various positions taken by Mr. Doshier and dotStrategy regarding the authorization of Lucas Symons to accept service. In one instance, Mr. Doshier and dotStrategy contend that "Lucas Symons was 'authorized in writing' (USPS DMM 508.1.1.8) as a 'delivery restricted' agent, 'in accordance with U.S. [P]ostal Service regulations [ARCP 4(d)(8)(A)(i)], by an 'original executed' Form 3849 (USPS DMM 508.1.1.8.f.) . . . ." (Dkt. No. 22-1, ¶ 4). While later, Mr. Doshier and dotStrategy attempt to draw a distinction in the type of authorization they are required to prove – relying on DMM 508.1.1.8(a) for the proposition that "Lucas Symons was 'authorized in writing' (USPS DMM 508.1.1.8) as a 'delivery restricted' agent 'in accordance with U.S. Postal Service Regulations [ARCP Rule 4(d)(8)(A)(i)]' 'to sign for such mail' (USPS DMM 501.1.1.8a), such mail being 'restricted delivery' U.S. Mail, not that Lucas Symons was an 'agent authorized by appointment or by law to receive service of summons [ARCP Rule 4(d)(5)." (Dkt. No. 22-1, ¶ 8).

Based on Arkansas law, the Court will address the USPS regulations that are relevant to the use of Form 3849 as a method to authorize service by mail on an agent for service of process.

10

*See* Ark. R. Civ. P. 4(d)(8)(A)(i). According to the USPS Domestic Mail Manual, provided by Mr. Doshier and dotStrategy, "'Restricted Delivery' is delivered only to the addressee or to the person authorized in writing as the addressee's agent" under certain enumerated conditions. (Dkt. No. 18-1, at 3 (Reg. 508.1.1.8)). The first listed condition is that "[m]ail for famous personalities and executives of large organizations is normally delivered to an agent authorized to sign for such mail." (*Id.* (Reg. 508.1.1.8(a)). Further, "Restricted Delivery" mail may be delivered to "an agent [authorized] on Form 3801 or by letter to the Postmaster. . . " or "Form 3849. . . may be used for the authorization. . . ." (*Id.* (Reg. 508.1.1.8(f)).

      As it relates to the purpose of Form 3849, the Domestic Mail Manual further states that:

> Form 3849 also may be used for authorization, if the Post Office has no standing delivery order or letter on file, when the addressee enters the name of the agent on the back of Form 3849 in the space provided and signs the form. The agent must sign for receipt of the article on the back of the form.

*Id.*

      Based on the record before the Court, "Lucus Simons" signed only his initials "LS" on a Form 3849 as the recipient of the summons and complaint in this case. The record evidence is that this name "Lucus Simons" does not correspond to anyone employed by Facebook or working as a Facebook contractor (Dkt. No. 9-2, ¶ 4). Neither Mr. Doshier nor dotStrategy has offered an explanation for this discrepancy. The Court concedes that, based on record evidence, the spelling of "Lucus Simons" is close to that of Lucas Symons who is employed by the Millennium Group, a contractor for Facebook, and whose duties include collecting Facebook's mail delivered to a local USPS location on a daily basis and bringing the mail to Facebook for processing (*Id.*, ¶ 5).

      For the purposes of resolving the pending dispute regarding service of process, despite there being no record evidence of it, the Court will assume that the "LS" initials or the "Lucus Simons" name was written by, or authorized on behalf of, Mr. Symons who works for the

11

Millennium Group. Even with this assumption, the Court concludes service of process on Facebook was ineffective.

Based on Mr. Cortes' declarations, the USPS does not have a written authorization of any kind, including a Form 3801, on file authorizing Mr. Symons or anyone else to accept Restricted Delivery U.S. Mail on behalf of Facebook or Mr. Zuckerberg (Dkt. No. 19-2, ¶ 5). Further, Mr. Cortes avers that neither Mr. Symons nor any other member of Mr. Cortes' team at the Millennium Group "has been authorized, in writing or in any other form, to accept service of process on behalf of Facebook or Mark Zuckerberg" or has been "the subject of an executed USPS 'Standing Delivery Order' form authorizing such person to accept Restricted Delivery U.S. Mail on behalf of Mark Zuckerberg, or on behalf of any other Facebook executive" (Dkt. No. 9-2, ¶¶ 7-8). He also affirms that "Lucas Symons has not been authorized, in writing or in any other form, to accept Restricted Delivery U.S. Mail on behalf of Facebook's CEO, Mark Zuckerberg, or on behalf of any other Facebook executive." (*Id.*, ¶ 9). There is no contrary proof in the record.

The USPS Form 3849 at issue in this case is incomplete and only shows the section of the form where "Lucus Simons" signed (Dkt. No. 18-4). The USPS Form 3849 section two requires that the addressee of a parcel sign in order to "authorize redelivery or to authorize an agent to sign for you." (Dkt. No. 19-2, ¶ 6). According to Mr. Cortes, the USPS only had a scan of the "Lucus Simons" signature and not a copy of the entire Form 3849; it included no signature by the addressee Mr. Zuckerberg authorizing an agent to sign for Mr. Zuckerberg when the Certified Mail, Restricted Delivery parcel was re-delivered (*Id.*, ¶¶ 6-8). Mr. Cortes states that the USPS only keeps the original forms for a short period of time after the forms have been electronically scanned (*Id.*, ¶ 8). Therefore, the completed Form 3849 at issue in this case has likely been destroyed and is unavailable to the parties and the Court, based on Mr. Cortes' sworn affidavit. Based on the

image of the package, the Return Receipt Green Card that was attached to the package was never signed or returned to counsel for Mr. Doshier and dotStrategy.

Mr. Doshier and dotStrategy seem to suggest that, because there is a signature on a Form 3849 from the USPS, the Form 3849 must have been completed properly (Dkt. No. 22-1, ¶¶ 15-16).  The Court rejects that notion, having reviewed all record evidence available to date.  Instead, the Court finds that, because there is no record evidence that Mr. Symons was a registered agent authorized to receive service or authorized pursuant to USPS Form 3801 or by letter to the Postmaster to receive U.S. Mail Restricted Delivery on behalf of Facebook or Mr. Zuckerberg, the only method for Mr. Symons to be an agent of Facebook or Mr. Zuckerberg was through authorization based on the USPS Form 3849.  Further, this record evidence comports with what the USPS represented to Mr. Doshier and dotStrategy; the USPS represented it provided to them "a copy of the 3849." (Dkt. No. 18-2).

Mr. Doshier and dotStrategy present record evidence that they contacted the USPS and attempted to obtain a receipt for the delivery of the summons and complaint, and the USPS sent them a scanned copy of only a portion of the relevant Form 3849 that is a part of the record evidence already in this case.  Mr. Doshier and dotStrategy, as well as Facebook, based on the declaration of Mr. Cortes, have been unsuccessful in their efforts to obtain the relevant complete Form 3849.  This likely is as a result of the USPS no longer having a copy of the entire form. Instead, according to the record evidence before the Court, the USPS maintains only that portion of the Form 3849 scanned and already of record in the case (Dkt. Nos. 18-2; 18-4).  Because there is sworn testimony in the record that the completed form is not available from the USPS and because there is nothing in the record to contradict this testimony, Mr. Doshier and dotStrategy

13

have failed to prove that they can obtain the relevant complete Form 3849, which is necessary to resolve this jurisdictional inquiry.

To the extent Mr. Doshier and dotStrategy contend that this Court should apply the "Best Evidence Rule" to this dispute and find in their favor, it is unclear how application of this rule aids Mr. Doshier and dotStrategy. The rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content." Fed. R. Evid. 1002. There are enumerated exceptions to the rule, including but not limited to admitting "other evidence," besides "[a]n original," if "originals are lost or destroyed." Fed. R. Evid. 1004(a). The other evidence that exists in this record is sworn testimony regarding the Form 3849 that does not advance Mr. Doshier or dotStrategy's arguments.

To the extent Mr. Doshier and dotStrategy argue that this Court should draw an inference of bad faith on the part of Facebook for failure to seek out or preserve evidence regarding service of process (Dkt. No. 22-1, ¶ 41-42, 69-70), they again fail to cite any legal authority in support of their argument. Facebook does not bear the burden regarding service of process, and no record evidence suggests why Mr. Doshier and dotStrategy, who do bear that burden, did not make inquiry of the USPS earlier regarding status of service in this case. Accordingly, the Court declines to draw any inference of bad faith on the part of Facebook based on such arguments.

Mr. Doshier and dotStrategy also attempt to rely for service of process on the more general provision of DMM 508.1.1.8(a) and claim that Mr. Symons was "an agent authorized to sign for such mail." (Dkt. No. 18-1, at 3 (DMM 508.1.1.8(a)). They assert that, for service of process, this is all that is required of them under Arkansas law. There are problems with this approach. First, this approach conflicts with the record evidence. The USPS when asked by Mr. Doshier and dotStrategy about the signature here did not cite to the general provision DMM 508.1.1.8(a).

Instead, the USPS said the signature of "Lucus Simons" appeared on the Form 3849. The Form 3849 is governed by specific USPS provisions, as the Court outlined above. Further, in their initial discussion of the Return Receipt Electronic, Mr. Doshier and dotStrategy quote provisions that indicate that the "[s]ignature is copied from PS Form 3849," which further confirms that this is the method of authorization at issue in this case (Dkt. No. 3, at 5-7).

Second, even if the Court were to overlook this conflict, the record evidence does not support taking an approach under the more general provisions of DMM 508.1.1.8(a). Even DMM 508.1.1.8(a) appears to require compliance with the standards described under DMM 508.1.1.7 regarding priority mail express and accountable mail when a return receipt is requested or the sender has specified restricted delivery. Mr. Cortes states in his declaration that he has "knowledge of who if anyone is authorized to accept Restricted Delivery U.S. Mail on behalf of Facebook, Mark Zuckerberg, or any other Facebook executive." (Dkt. No. 9-2, ¶ 2). Based on Mr. Cortes' declarations, the USPS does not have a written authorization of any kind on file authorizing Mr. Symons or any individual to accept Restricted Delivery U.S. Mail on behalf of Facebook or Mr. Zuckerberg, and neither Mr. Cortes, nor any member of his team, nor Mr. Symons has been authorized in writing or any other form to accept service of process on behalf of Facebook or Mark Zuckerberg (Dkt. Nos. 19-2, ¶ 5 ("I confirmed that the Post Office has no written authorizations of any kind (including a Form 3801) on file authorizing any individual to accept Restricted Delivery U.S. Mail on behalf of Mark Zuckerberg or on behalf of Facebook."); 9-2, ¶¶ 7-9 ("7. Neither I nor any member of my team, including Lucas Symons, has been authorized, in writing or in any other form, to accept service of process on behalf of Facebook or Mark Zuckerberg. 8. Neither I nor any member of my team, including Lucas Symons, has been the subject of an executed USPS 'Standing Delivery Order' form authorizing such person to accept Restricted

Delivery U.S. Mail on behalf of Mark Zuckerberg, or on behalf of any other Facebook executive. 9. Lucas Symons has not been authorized, in writing or in any other form, to accept Restricted Delivery U.S. Mail on behalf of Facebook's CEO, Mark Zuckerberg, or on behalf of any other Facebook executive."). There is no contrary proof in the record.

The existence of a yellow sticker with the word "legal" on it dated July 16, 2018, does nothing to alter this analysis regarding service (Dkt. No. 18, ¶¶ 129-33). Mr. Doshier and dotStrategy fail to explain persuasively how it does in the light of Arkansas law that provides "[a]ctual knowledge of a proceeding does not validate defective process." *Wilburn*, 768 S.W.2d at 532. Further, the Court rejects any argument that this evidence evinces an effort to evade service on the part of Facebook and thereby provides a basis for conducting jurisdictional discovery.

Any argument in support of service made by Mr. Doshier and dotStratgey based on a claim that "LS" represented to the USPS that he was an agent or *defacto* agent authorized in writing to receive the mail or sign for such mail on behalf of Facebook or Mr. Zuckerberg (Dkt. No. 18, ¶¶ 111-14) is undercut by Arkansas law examining and rejecting similar arguments. *Green v. Yarbrough*, 771 S.W.2d 760, 761 (Ark. 1989) (despite testimony from the postman who made the delivery that the signor convinced him that she had authority to receive the intended recipient's mail, the court concluded service was improper because the signor was not an agent appointed pursuant to applicable postal regulations and did not sign the form as the recipient's agent but merely signed the recipient's name and her initials); *Emerson v. Bridgforth*, 608 S.W.2d 47 (Ark. 1980) (examining agency for service of process under Arkansas law); *see also* Ark. R. Civ. P. 4(d)(8)(A)(i) ("the agent of the addressee must be authorized in accordance with U.S. Postal Service regulations."). Mr. Doshier and dotStrategy cite no legal authority permitting this Court to draw a different conclusion under Arkansas law.

Based on the record evidence before it and for the reasons explained above, the Court determines that plaintiffs did not properly serve Facebook on July 16, 2018.

### III. Notice Of Removal And Remand

That statute that governs removal is 28 U.S.C. § 1446, which provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446. The 30-day time limit for removal is applicable to claims involving the Class Action Fairness Act, 28 U.S.C. § 1453, and to claims involving federal question jurisdiction. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Generally, upon a motion to remand, the removing party has the burden to show that removal is proper. *See Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009).

Because this Court concludes that plaintiffs did not effectively serve Facebook on July 16, 2018, that date did not trigger the running of a 30-day removal deadline for Facebook. Further, as this Court observed in its prior Order on jurisdictional discovery, Mr. Doshier and dotStrategy also suggest in their filings based on this Court's review that, even without proper service on July 16, 2018, Facebook's notice of removal may be untimely under 28 U.S.C. § 1446.

The United States Supreme Court had the occasion to review the meaning of the language "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading. . ." in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 352 (1999). In that case, the Supreme Court held:

> That a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, "through service or

> otherwise," after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.

526 U.S. at 347. In the case, plaintiff Michetti filed a complaint in Alabama state court against defendant Murphy on January 26, 1996. *Id.*, at 348. Michetti did not serve Murphy at the time the complaint was filed but three days later faxed a "courtesy copy" of the file-stamped complaint to one of Murphy's vice presidents. *Id.* The parties engaged in settlement discussions until February 12, 1996, when Michetti officially served Murphy under local law by certified mail. *Id.* On March 13, 1996, which was 30 days after service but 44 days after receiving the faxed copy of the complaint, Murphy removed the action to federal court under 28 U.S.C. § 1441. *Id.* Michetti moved to remand, contending the notice of removal had not been timely filed under 28 U.S.C. § 1446(b). *Id.* The district court denied the motion to remand. *Id.*, at 349. On interlocutory appeal, the Eleventh Circuit Court of Appeals reversed the district court and remanded, instructing the district court to remand and determining that "the clock starts to tick upon the defendant's receipt of a copy of the filed initial pleading." *Id.* Because lower courts were divided on the question, the Supreme Court granted certiorari and resolved the split with its holding regarding formal service of process. *See also Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P.*, 254 F.3d 753 (8th Cir. 2001) (examining the holding of *Murphy Brothers*).

Since *Murphy Brothers*, at least one district court in the Eighth Circuit has limited the holding of *Murphy Brothers*. *See, e.g., Waddell v. National Asset Recovery, Inc.*, Case No. 08-0250-CV-W-HFS, 2009 WL 10705240 (W.D. Mo. 2009) (examining allegations a corporate defendant in bankruptcy intentionally evaded service when assessing the timeliness of removal). Since the *Murphy Brothers* decision, at least one other district court in the Eighth Circuit has been confronted with, and rejected, the argument that, if removal is effected prior to service of process, removal may be premature and ineffective. *See Miller v. Cottrell, Inc.*, Case No. 06-0141-CV-W-

18

NKL, 2006 WL 1313367 (W.D. Mo. 2006) (rejecting the argument of premature removal). As this Court stated in its prior Order on jurisdictional discovery, Mr. Doshier and dotStrategy have not articulated clearly either of these theories. They do not cite these cases. Instead, they seem to acknowledge the holding of *Murphy Brothers* (Dkt. No. 18, ¶¶ 158-59, 163-65).

To the extent Mr. Doshier and dotStrategy intend to rely on these arguments to defeat removal, they cite no controlling authority for a "bad faith" exception to *Murphy Brothers*. To the extent they intend to argue the holding in *Waddell* may create one, *Waddell*, 2009 WL 10705240, at *3 ("The *Murphy Brothers* rule is simply one that 'ordinarily' applies . . . and should not be used when it is the party denying service that is responsible for the defect and had actual knowledge of the allegations it has ignored"), they have not cited *Waddell* or any other authority to this Court as support for, or even articulated clearly, such an argument. Further, Mr. Doshier and dotStratey do not cite *Miller* or any other authority to this Court as support for, or even articulate clearly, an intent to pursue a premature removal argument.

For all of these reasons, the Court denies plaintiffs' motion to remand.

**IV.     Default Judgment**

Because the Court determines that plaintiffs did not effectively serve Facebook on July 16, 2018, that date did not trigger Facebook's 30-day deadline to answer plaintiffs' complaint. Proper service is mandatory. Facebook is not in default. Further, other factors exist in this case, as set out by Facebook in its filings, that weigh against an entry of default (Dkt. No. 9, at 14-17). For these reasons, even if service had been proper, the Court would deny default judgment in favor of plaintiffs on the record before it. Having examined the entire record before it, and having reviewed all legal authorities cited and arguments made, the Court denies plaintiffs' motion for default judgment (Dkt. No. 3).

### V. Conclusion

The Court grants Mr. Doshier and dotStrategy's motion for leave to file reply in support of their motion to remand (Dkt. No. 22). The Court directs Mr. Doshier and dotStrategy to file their reply in support of their motion to remand within 10 days from the entry of this Order. Having examined the entire record before it, and having reviewed all legal authorities cited and arguments made, the Court rejects plaintiffs' argument that Facebook's notice of removal was not timely and properly filed or that Facebook is in default. The Court denies plaintiffs' motion for remand and motion for default judgment (Dkt. Nos. 3, 15).

So ordered this the 30th day of September, 2019.

*Kristine G. Baker*

Kristine G. Baker
United States District Judge