Honorable District Judge William Alsup        November 5, 2020
U.S. District Court for the Northern District of California

### Re:   *dotStrategy, Co. v. Facebook, Inc.*, Case No. 20-cv-00170

Dear Judge Alsup:

In response to the Court's invitation at yesterday's hearing on plaintiff's motion for leave to file a second amended complaint, Defendant Facebook respectfully submits this letter brief to address one argument raised in plaintiff's reply brief.

Plaintiff contends that *Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010), and *In re First Alliance Mortgage*, 471 F.3d 977 (9th Cir. 2006), stand for a general proposition that "even unambiguous contract language is insufficient to preclude UCL liability where one of the parties to the contract makes, as here, contradictory or misleading representations in order to obfuscate or obscure the actual terms of the contract."  Dkt. 98 at 3-4.  This argument overstates *Rubio* and *First Alliance*, neither of which articulated such a rule, let alone on facts remotely resembling those at issue here. *First Alliance* upheld common-law fraud liability based on a pattern of false statements designed to obscure, deflect from, and undermine subsequent contradictory disclosures. *See* 471 F.3d at 985, 992.  And *Rubio* involved regulatory findings confirming that a cardholder agreement's reservation of rights contradicted the generally understood meaning of "fixed" credit card APRs.  *See* 613 F.3d at 1200-1202.

The fraud in *First Alliance* featured an "elaborate and detailed sales presentation" that "was unquestionably designed to obfuscate points, fees, interest rate, and the true principal amount of the loan."  471 F.3d at 985.  The defendant loan provider "deflect[ed] attention away from things that consumers might normally look at" and conducted the presentation "in such a way as to lead a consumer to disregard the high [APR] when it was ultimately disclosed."  *Id*.  This pattern of false statements ensured that borrowers "were largely unaware" of "high interest rates and hidden high origination fees or 'points' and other 'junk' fees."  On those facts, *First Alliance* found sufficient evidence that the loan provider committed fraud notwithstanding true facts "ultimately disclosed on the federally-required" TILA disclosure.  *Id*. at 985, 989.

*Rubio*, a TILA case, involved a credit card solicitation advertising a "fixed" APR. After plaintiff obtained the card, the defendant bank increased the APR.  613 F.3d at 1197-98.  Importantly, the Federal Reserve Board of Governors—"the very agency tasked with implementing TILA"—had concluded that a "fixed" APR generally means one that "will not be changed and that the creditor has not reserved the right to change" for any reason.  *Id*. at 1200-02.  On those facts, *Rubio* concluded that a Cardholder Agreement explaining that the terms were "subject to change" did not preclude plaintiff's TILA and UCL claims because it could be misleading "to describe an APR as 'fixed' when the creditor has reserved the right to change the APR for any reason."  *Id*. at 1202-05.

In contrast to these decisions, plaintiff here does not plausibly allege that the Help Center statement made any contradictory or misleading representations, let alone in order to obfuscate or obscure the Self-Serve Ad Terms.  Section 9 of those Terms

1

states that Facebook has "systems that attempt to detect and filter certain click activity." *See* Dkt. 72 at 4.  The Help Center statement contains a more detailed description of one such system: if Facebook "detect[s] or [is] alerted to suspicious or potentially invalid click activity, a manual review is performed to determine the nature of the activity" and advertisers "will not be charged for clicks that are determined to be invalid."  Dkt. 97 at 7.  That statement does not contradict the rest of the Self-Serve Ad Terms, which make clear that Facebook is "not responsible for click fraud, technological issues, or other potentially invalid click activity that may affect the cost of running ads."  And there is no dispute that this disclaimer covers the clicks at issue; plaintiff concedes that Section 9 "disclaim[ed] liability for such interactions."  Dkt. 95 at 2.

Notably, plaintiff has not alleged—and has disclaimed any theory—that Facebook *never* performs manual reviews of suspicious or potentially invalid click activity when it detects or is alerted to such activity, or that Facebook knew *clicks* were invalid but proceeded to charge advertisers for them anyway.  *See* Dkt. 96-2, ¶¶ 85, 94(d); Dkt. 74 at 15.  Accordingly, and unlike in *First Alliance* and *Rubio*, the Help Center statement is accurate on its face and does not contradict or misrepresent anything in the parties' contract; nor is it rendered "nugatory" by that contract.  *See* Dkt. 98 at 3.

Furthermore, unlike in *First Alliance* and *Rubio*, plaintiff here cannot plausibly argue that Facebook "obfuscate[d] or obscure[d]" the Self-Serve Ad Terms.  *See* Dkt. 98 at 3-4.  Plaintiff filed this lawsuit affirmatively claiming not only to have read, but also to have relied on, the precise contractual disclaimers at issue.  *See* Dkt. 72 at 4-6; Dkt. 76 at 6-7; Dkt. 97 at 5-7.  *First Alliance* and *Rubio* provide no support for the notion that a plaintiff can sue based on unambiguous contractual disclaimers, only to later reverse course and complain, when convenient to avoid dismissal, that those terms were too "buried" to be relevant.  *See* Dkt. 72 at 5-6 n.4 (it is well-established that courts may look to prior pleadings in determining the plausibility of subsequent amendments); Dkt. 89 at 4-5; Dkt. 97 at 2 n.3; *cf. First Alliance*, 471 F.3d at 985 (borrowers "had no idea they were being charged" more than "they thought they had agreed to").

Finally, neither *First Alliance* nor *Rubio* abrogates the general rule, well-established in the Ninth Circuit, that an alleged misrepresentation must be "read reasonably and in context." *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995); *see* Dkt. 97 at 4-5; *accord Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (an alleged misrepresentation must be considered "in its proper context"); *Maloney v. Verizon Internet Servs., Inc.*, 413 F. App'x 997, 999 (9th Cir. 2011) (affirming dismissal of UCL claim where alleged misrepresentation was qualified by disclaimer in Terms of Service).  Here, as Facebook has explained, that context includes the Self-Serve Ad Terms, which plaintiff admits "disclaim[ed] liability for" the clicks at issue.  Dkt. 95 at 2.  Particularly on these unique facts, neither *First Alliance* nor *Rubio* requires the Help Center statement to be read in a vacuum that disregards the contractual language to which plaintiff agreed.  *Accord DotStrategy Co. v. Twitter Inc.*, 2020 WL 4465966, at *5 (N.D. Cal. Aug. 3, 2020) (Breyer, J.) (key question is whether plaintiff's alleged reliance "was reasonable even in light of the contractual disclaimers").

Respectfully submitted,

*[signature: Ashley Simonsen]*

Ashley Simonsen
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: +1 (424) 332-4782
Facsimile: +1 (424) 332-4749
Email: asimonsen@cov.com

SIMON J. FRANKEL
SEAN HOWELL
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: showell@cov.com

KATHRYN E. CAHOY
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: kcahoy@cov.com

*Attorneys for Defendant Facebook, Inc.*